UNITED STATES of America, Appellee,

v.

Bennie CARTER, Clifton Carter, Edward Lee Carter, Lynette Carter, Mary Jane Carter, Tommy Carter, and Chuck Sweeten, Appellants.

Nos. 78–1583, 78–1588 and 78–1590.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 10, 1979.

Decided Nov. 27, 1979.

Rehearing Denied March 5, 1980.

Jesse L. Leeds, Muskogee, Okl., for appellants, Bennie Carter, Clifton Carter, Edward Lee Carter, and Mary Jane Carter.

Brian K. Holland, of Haddon, Morgan & Foreman, Denver, Colo. (G. Bryan Morgan, Denver, Colo., with him on the brief), for appellants, Lynette Carter, Tommy Carter, and Chuck Sweeten.

Julian K. Fite, U. S. Atty., Muskogee, Okl., for appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BOHANON, District Judge *.

SETH, Chief Judge.

This is an appeal by seven codefendants after a single trial in which all defendants were charged with conspiracy to manufacture, possess with intent to distribute, and distribute marijuana. Various defendants were charged with one or more substantive counts. The Government moved to dismiss as to two defendants during trial, and three other defendants were acquitted of all charges. Appellant, Clifton Carter, was convicted on all counts, and each of the other Carter family members was convicted of conspiracy. Chuck Sweeten was acquitted on the conspiracy count and convicted on the substantive count of possession with intent to distribute.

The central figures in the marijuana production and sales were James Earl Cook, Ralph Patty (both deceased), and Clifton Carter. Marijuana was cultivated on the farms of Cook and Patty, with proceeds to be divided among Cook, Patty, Clifton Carter, and Paul Stewart. Various members of the Carter family participated in the cultivation, harvest, and transportation of the marijuana. In addition, marijuana was transported in quantities from Edinburg, Texas, to the Carter, Cook, and Patty farms for distribution with the homegrown product.

The Carter family members appealing from the trial below are Clifton Carter, his wife, Mary Jane, and his three sons, Tommy, Bennie, and Edward Lee, and Bennie's wife, Lynette. Chuck Sweeten, an alleged associate of James Earl Cook, also appeals his conviction.

The defendants argue that a severance should have been granted as to each of them in order to avoid the danger of "mass trials" and "blanket convictions." They charge that several conspiracies had been set forth in the indictment even though Count One charges only a single conspiracy to manufacture, possess with intent to distribute, and distribute marijuana.

The indictment named thirty-six coconspirators in Count I, and followed with fifteen substantive counts, and a large number of overt acts. The trial court made an initial severance, and tried the group of twelve defendants in *this* action. As mentioned above, seven were found guilty and have taken this appeal. At another trial, the court tried another group, this of nine defendants. This ended in a mistrial, and became the *Bowline* case.

In the *Bowline* case after the mistrial the court severed the conspiracy count (Count I) from the substantive counts and later dismissed the conspiracy count as to all seven defendants therein tried. The trial court in *Bowline* found that overt acts numbered one through eleven in Count One set forth three different conspiracies: The main conspiracy to cultivate and sell the 1976 crop; the later agreement between Clifton Carter, Ralph Patty, and James Earl Cook to plant the 1977 marijuana on Patty's and Cook's lands and to divide the proceeds, with participation by various defendants; and a final conspiracy involving the purchase and trafficking in marijuana from Texas to Oklahoma. The trial court, in the dismissal of what was designated by the Government as the "conspiracy" count (Count I), apparently relied on *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. The defendants were purchasers of marijuana from the Carter enterprise.

The *Bowline* dismissal was appealed to this court by the Government, and we af-

---

* Of the Northern, Eastern and Western Districts of Oklahoma, Sitting by Designation.

firmed the dismissal, *U. S. v. Bowline* at 593 F.2d 944 (10th Cir.). In the opinion in *Bowline* we agreed with the trial court that there were three conspiracies alleged in the indictment. One was in Count I, and the others in the portion of the indictment setting forth the overt acts. We held in *Bowline* that the problem could have been handled under Rule 12(b)(2), but we affirmed. It was also indicated that if the problem became evident at trial, an election by the Government could have been requested. We there said:

"... The trial court's reasoning was that the several defendants at trial were a mixed group, some of whom had participated in one or more of the conspiracies, but many of whom had not participated in some of the conspiracies and thus all were subjected to prejudice as a result of being tried in an atmosphere where the acts and conspiracies of others were introduced. This was the underlying reason for the variance that was found and for the action that was taken."

Our opinion in *Bowline*, and the trial court's caveat, was based on the proof developed during some six days of trial before the mistrial was declared, and relating to the defendants there concerned. The trial court had stated as to the dismissal of Count I that:

"The conclusion which the court reaches in this case is limited to the evidence which was adduced in the trial against the above named seven defendants and is not applicable with respect to the defendants who went to trial in this case on April 10, 1978 [the defendants in this appeal]."

The defendants in *Bowline* were the customers who bought and picked up marijuana at the farms. That was part of the "chain" portion of the enterprise.

In this appeal, the evidence reveals a complete family involvement in the marijuana business in general. Each was a participant in an overall larger conspiracy to raise and distribute marijuana, as charged in Count I of the indictment. Clifton Carter participated in all aspects of all conspiracies. Bennie, Edward Lee, and Tommy Carter all participated in cultivation, harvest, and transportation of the marijuana. There is evidence that Bennie cleared the fields for planting, and Tommy bought the trash compactor for packaging the crop. The evidence indicates that Lynette and Mary Jane Carter picked up a load of the crop at the farm. There is also evidence that each of the family members was present at some time during discussion of the trips to Texas.

■ It is apparent from the record that there was sufficient evidence for the jury to have found full knowledge by each family member defendant in the details and the extent of each of the several conspiracies. Overt acts were proved as to each family member relating to each conspiracy. The extent of proof relating to Mary Jane and to Lynette Carter was limited, but it showed that they delivered marijuana as above mentioned, and knew of the importation from Texas. Lynette was seen in the fields. All of this was sufficient to include them in each conspiracy.

We said in *United States v. Butler,* 494 F.2d 1246 (10th Cir.), that "... mere knowledge or approval of or acquiescence in the object and purpose of a conspiracy without an agreement to cooperate in achieving such object or purpose does not make one a party to a conspiracy. *Jones v. United States,* 365 F.2d 87 (10th Cir.)." This still must be the standard, but here we have more than "mere" approval or knowledge. We have instead proof of an agreement to participate with at least a known core group in an undertaking with a purpose and scope known to these defendants. The inferences or presumptions in *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154, arising from the circumstances need not be resorted to here. Again, as pointed out in *Butler,* there must be an "agreement" (proved in a variety of ways) to "cooperate." This test has here been met. This does not resemble in any way the circumstances dealt with in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

■■ On the matter of severance, it is apparent that the fact that a further severance would have improved chances for acquittal will not suffice to require such action. *United States v. Heath,* 580 F.2d 1011 (10th Cir.); *United States v. Campanale,* 518 F.2d 352 (9th Cir.). Each member of the Carter family claims prejudice resulted from nonseverance because each was forced to defend against evidence of activities and agreements in which they were not involved, thus generating "guilt by association." However, from a review of the record we must conclude that even if the trials had been severed as to each family member and/or each conspiracy, the independent evidence against each one of them was and would have been sufficient for conviction.

The only nonfamily member appealing in this case is Chuck Sweeten. Though acquitted of the conspiracy charge, Chuck Sweeten has argued also that nonseverance has prejudiced his case because he was forced to defend against the charge even though there was no evidence to show that he was a party to the conspiracy. The evidence shows only that he purchased marijuana several times at the farm. Indeed, the evidence tended to show that he was not a party and had no knowledge of the agreement to plant or transport the marijuana. However, prejudice cannot be shown by this defendant because he was acquitted on the conspiracy charge, and the evidence against him on the substantive count is uncontroverted. When there is overwhelming evidence to support his conviction on the substantive count of possession with intent to distribute a controlled substance, a defendant such as Sweeten was not prejudiced by submission of a conspiracy count to a jury even though the conspiracy count is not sustained by sufficient evidence. *United States v. Sperling,* 506 F.2d 1323 (2d Cir.). The separation of defendant Sweeten from the other defendants as to the conspiracy shows the discernment of the jury as to the parties to the conspiracies.

■■ The defendants, Lynette Carter and Tommy Carter, urge that nonseverance has further prejudiced their cases because their attorney was forced into multiple representation of codefendants Lynette, Tommy, and Clifton Carter. They assert that the resulting conflict of interest violates their Sixth Amendment right to effective assistance of counsel. This argument has no merit for two reasons as counsel for the codefendants was privately retained and if any conflict was foreseen or developed during trial, defendants could have retained separate counsel. Further, joint representation is not *per se* improper as long as defendants have competent and efficient representation by counsel. *United States v. Smith,* 464 F.2d 194, 197 (10th Cir.). The evidence indicates that a proper defense was presented and competent representation was provided for all codefendants. Secondly, in this case each defendant was asked individually by the court whether they realized that they had a right to be represented separately; that their positions during the trial might be different from the position of other family members; and that a possible conflict of interest might develop between the positions of one or more family members. Each was then asked whether he or she nonetheless wanted to be represented by attorneys Stipe and Wadley. Additionally, attorney Wadley was asked whether he foresaw any conflict, and was requested to notify the court within three days if any conflict should develop. Under circumstances such as these, we find no merit to the contention that the defendants were denied effective assistance of counsel.

■ Defendant, Clifton Carter, claims that his constitutional right to remain silent was violated when his tape-recorded conversation with coconspirator witnesses was admitted into evidence. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, does not apply to interrogation in noncustodial circumstances. *United States v. Beckwith,* 166 U.S.App.D.C. 361, 510 F.2d 741 (D.C.Cir.), *aff'd,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1. The record clearly reflects and it is uncontroverted that during the taped conversations the defendant was not in custody.

■ In closing argument by the United States Attorney, Clifton Carter was referred to as the "symbolic devil of McCurtain County." It is urged on appeal that this so prejudiced the jury as to prevent a fair trial.

"[I]mproprieties of arguments by counsel to the jury do not call for a new trial unless they are so gross as probably to prejudice the defendant and the prejudice has not been neutralized by the trial judge before submission of the case to the jury."

*United States v. Benson,* 487 F.2d 978, 981 (3d Cir.), citing *United States v. Leftwich,* 461 F.2d 586, 590 (3d Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178. Here, the objection to the prosecutor's statement was sustained and the attorney made an open court apology for making the statement. We conclude that the comment was not unduly prejudicial.

■ Defense counsel made a pretrial motion for Jencks Act materials. The trial judge denied this motion, stating that the Government would comply with Jencks Act requirements at the appropriate time. The appellants made no further Jencks motions throughout the trial, but they contend that their right to Jencks matter (and accordingly their right to complain on appeal of any possible Jencks Act violations) was preserved in their pretrial motion. We reject this contention at the outset. The court's order simply observed that the Government "responds [to defendant's Jencks motion] by stating that it will make disclosure of any such statements in accordance with 18 U.S.C. § 3500." This observation hardly constitutes an order placing the Government under a "continuing duty." The Jencks Act protects Government files from unnecessary and vexatious "fishing expeditions" by defendants. *Palermo v. United States,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. At the same time the Act assures defendants their Sixth Amendment rights to confront their accusers by compelling the Government to produce "statements" that may be useful for impeachment of Government witnesses. *United States v. Smaldone,* 544 F.2d 456, 460 (10th

Cir.). The statute clearly contemplates that the production of Government documents be conditioned upon a timely motion by the defense. *United States v. Keine,* 436 F.2d 850 (10th Cir.). This time is expressly provided in the statute. The pretrial motion was properly denied. The trial judge, of course, need not order production before trial. *Robbins v. United States,* 476 F.2d 26 (10th Cir.).

■ Appellants also argue that their posttrial motion, which contended that the Government failed to comply with the Jencks Act, sufficiently preserves the issue for appeal. By failing to make a timely motion for the production of Jencks Act materials as the statute requires, appellants waived any right they may have had to complain on appeal of an alleged lack of governmental production.

The trial court admitted into evidence a tape-recorded conversation, a participant in which was Clifton Carter, and provided the jury with a transcription of the admitted portion of the tape. The transcripts were used only to identify the speakers. Appellant attacks the admission of this tape on the basis of inaudibility and contends that the Government failed to satisfy the requirements for the admission of tape recordings.

■ The admissibility of a tape recording that is challenged as inaudible is entirely within the sound discretion of the trial court. *United States v. Watson,* 594 F.2d 1330 (10th Cir.). Upon examination of the record we discern no error in the tape's admission. While we note that "[t]here are portions of the tape where inaudibilities occur" (testimony of Government witness Means), appellant declines to argue that the recording is so unintelligibly inaudible as to render it untrustworthy. *See United States v. Jones,* 540 F.2d 465, 470 (10th Cir.).

The Government laid a proper foundation for the tape's admission. The requirements for a satisfactory foundation are particularly stringent. *See United States v. Starks,* 515 F.2d 112, 121, n. 11 (3d Cir.) (quoting

United States v. McKeever, 169 F.Supp. 426, 430 (S.D.N.Y.), aff'd, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651.

There was no prejudice to other Carter family defendants from the admission of the tape. The trial judge admitted only portions of the tape, and issued appropriate limiting instructions to the jury as to the proper use of the tape.

AFFIRMED.