UNITED STATES of America,
Plaintiff–Appellee,

v.

Bernard J. McINTYRE,
Defendant–Appellant.

No. 86–2212.

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1987.

Rehearing Denied March 10, 1988.

Warren Gotcher, of Gotcher, Brown and Bland, McAlester, Okl., for defendant-appellant.

Arlene Joplin, Asst. U.S. Atty. (William S. Price, U.S. Atty., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, District Judge.[*]

McKAY, Circuit Judge.

Defendant was indicted on twelve counts for his conduct in purchasing and distributing cocaine,[1] and subsequently was found guilty on counts one, six, seven, eight, nine and ten. The remaining counts were dismissed on the Government's motion. Defendant filed a motion for new trial and a motion for judgment of acquittal. Both motions were denied. Defendant appeals his convictions and the denial of his post-trial motions.

## I. Factual Background

"In setting forth the circumstances giving rise to this appeal, we view the evidence in the light most favorable to the jury's verdict." *United States v. Kendall,* 766 F.2d 1426, 1429 (10th Cir.1985), *cert.*

---

[*] Honorable Wesley E. Brown, United States Senior District Judge, District of Kansas, sitting by designation.

1. Counts in Defendant's indictment:
Count 1: 21 U.S.C. § 846 (1982)—conspiracy to distribute cocaine;
Count 2: 21 U.S.C. § 841(a)(1) (1982)—possession with intent to distribute cocaine on or about October 17, 1982;
Count 3: 21 U.S.C. § 841(a)(1) (1982)—distribution of cocaine on or about October 17, 1982;
Count 4: 21 U.S.C. § 841(a)(1) (1982)—possession with intent to distribute cocaine on or about October 20, 1982;
Count 5: 21 U.S.C. § 841(a)(1) (1982)—distribution of cocaine on or about October 20, 1982;

Count 6: 21 U.S.C. § 841(a)(1) (1982)—possession with intent to distribute cocaine on or about April 29, 1985;
Count 7: 21 U.S.C. § 842(a)(1) (1982)—distribution of cocaine on or about April 29, 1985;
Count 8: 21 U.S.C. § 843(b) (1982)—using a telephone in facilitating the distribution of cocaine on or about March 24, 1986;
Count 9: 21 U.S.C. § 843(b) (1982)—using a telephone in facilitating the distribution of cocaine on or about March 24, 1986;
Count 10: 21 U.S.C. § 841(a)(1) (1982)—possession with intent to distribute cocaine on or about March 24, 1986;
Count 11: 21 U.S.C. § 841(a)(1) (1982)—distribution of cocaine on or about March 24, 1986;
Count 12: 21 U.S.C. § 843(b) (1982)—using a telephone in facilitating the distribution of cocaine on or about March 26, 1986.

*denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).

Defendant became the focus of an FBI investigation in May of 1985 when Dorris Patillar, a friend of the defendant, made a plea agreement with the Government which required her cooperation in investigating the defendant. Between 1982 and 1985, before her plea agreement, Ms. Patillar, the defendant and others were allegedly involved with the possession and distribution of cocaine. Defendant purchased cocaine from certain individuals, and on one occasion purchased cocaine and shared it with the seller and Ms. Patillar. In the winter of 1983, Ms. Patillar purchased cocaine for the defendant, received $700 from him upon delivery which she, in turn, delivered to the seller. Additionally, an employee of one of defendant's friends testified that defendant offered cocaine to her in 1983. In April 1985, defendant met Ms. Patillar and a friend at a club in Oklahoma City. The three went to Ms. Patillar's apartment to share a "rock" (a form of cocaine) defendant had brought from Tulsa.

The defendant approached Ms. Patillar several times, allegedly to buy cocaine, after she agreed to cooperate with the Government. In June 1985, at the request of the FBI, Ms. Patillar recorded a telephone call from the defendant in which she asked him if he could get some cocaine. He replied that his sources in Tulsa were no longer available. Apparently Ms. Patillar and the defendant communicated after that but did not meet again for nine months.

On March 24, 1986, Ms. Patillar met the defendant at his office. She was wearing a concealed tape recorder and a body transmitter provided by the FBI. The two discussed defendant's unavailable sources in Tulsa. Defendant told Ms. Patillar he had $50; she told him she could get some money if he had a source for cocaine. The two then went to an apartment belonging to Edwynna Royal to buy cocaine, but no one was home. The couple separated, and Ms. Patillar went home. She called defendant later at a restaurant to see if he had con-

tacted anyone. Defendant hung up, called her back and arranged to meet her at a Howard Johnson's. At Howard Johnson's defendant went inside to make a telephone call, and received a busy signal. When he came out, he and Ms. Patillar returned to Edwynna Royal's apartment.

Ms. Patillar gave defendant $300 she had obtained from the FBI. The couple entered the apartment, and defendant gave Ms. Royal $375. Ms. Royal left and returned about forty minutes later with three packages of cocaine. Defendant picked up the packages, left the apartment with Ms. Patillar, gave her two packages and kept one. Ms. Patillar dropped defendant off at Howard Johnson's, met an FBI agent, gave him the tape recording and one package of "a white powdery substance." She subsequently found another package that she also turned over to the FBI.

## II. *Counts 6 to 10—Admissibility of Tape Recordings*

Defendant objects to all his convictions on the ground that the trial court erred in admitting the tape recordings secured by Ms. Patillar. Defendant raises four arguments with respect to the recordings: (1) the tapes should not have been admitted because they contained substantial inaudible portions which rendered the recording as a whole untrustworthy; (2) foundation requirements for admitting the tapes had not been satisfied; (3) defendant was denied his right to a public trial under the sixth amendment because the public's ability to hear the tapes was much worse than the jury's; and (4) the jury should not have been allowed to use the transcripts from the recordings during the playing of the tapes because the transcripts were inaccurate.

The "admissibility of tape recordings that are partially inaudible" as evidence is within the "discretion of the trial judge." *United States v. Devous,* 764 F.2d 1349, 1353 (10th Cir.1985). *See also United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Recordings are usually admissible unless "the inaudible

portions are so substantial as to render untrustworthy the recording as a whole. Admission is especially appropriate 'where a witness who heard the statements also testifies and the recording gives independent support to his testimony.'" *United States v. Davis*, 780 F.2d 838, 846 (10th Cir.1985) (citations omitted). In upholding the admissibility of the tapes, the *Davis* court noted that the trial court listened to the tapes *in camera* before ruling on their admissibility, that a party to the conversation testified as to its accuracy, that the unintelligible portions did not seem to have been altered, and that an agent testified as to the chain of custody. *Id.*

■ In this case the trial court conducted a hearing on the admissibility of the tapes and discussed its concerns regarding their audibility. Record, vol. 4, at 1–59. The court listened to the tapes prior to trial and found them to be sufficiently audible. Record, vol. 6, at 433–36. The trial court also gave counsel two extra days to work with the sound enhancing equipment to be used at trial. Record, vol. 4, at 1–59. Ms. Patillar's testimony that the recorded conversations were as she remembered, record, vol. 6, at 358, and the FBI's testimony establishing the chain of custody, record, vol. 5, at 173–74, also support admissibility of the tapes. In light of the evidence, we conclude that the trial court did not abuse its discretion in admitting the tapes because they contained some inaudible portions.

Second, defendant claims the tapes should not have been admitted because the Government failed to satisfy two parts of the seven-part test for laying the foundation of sound recordings announced in *McMillan v. United States*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Both parties erroneously conclude that the seven elements enumerated in *McMillan* are binding precedent in this court. The *McMillan* criteria were originally set out in *United States v. McKeever*, 169 F.Supp. 426 (S.D.N.Y.1958), a case which, in 1979, this court cited with approval. *United States v. Carter*, 613 F.2d 256, 261–62

(10th Cir.1979), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 24 (1980). However, since *Carter*, we have "specifically rejected the adoption of 'inflexible [foundation] criteria applicable to all cases.'" *United States v. Jones*, 730 F.2d 593, 597 (10th Cir.1984) (citations omitted; brackets in original text) (quoting *United States v. Smith*, 692 F.2d 693, 698 (10th Cir.1982)). "We recognize that the factors set out in *McKeever* ... may assist a trial judge in ruling upon foundation questions, but we will not upset the judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." *Jones*, 730 F.2d at 597.

Defendant's arguments that there is no testimony as to the accuracy of the tape and that Ms. Patillar was induced to secure the recorded conversations are not supported in the record. Thus, on its face, the record does not indicate that the trial court abused its discretion by admitting the tapes without first establishing adequate foundation.

■ Third, defendant claims that he was denied his sixth amendment right to a public trial. The Government notes that defendant did not make this objection at trial. Defendant was both able to raise the objection and had ample opportunity to do so when the court addressed the issue of the difference in the ability of the public and the jury to hear the tapes in a hearing. At the hearing defendant opposed releasing the tapes and transcripts to representatives of the media, but did not object to the public's inability to hear the tapes. Record, vol. 6, at 462–69. Defendant is therefore precluded from raising this claim on appeal. *United States v. Mitchell*, 783 F.2d 971, 976 (10th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

Finally, defendant claims that transcripts of the recordings should not have been provided to the jury because Ms. Patillar testified the transcripts were inaccurate. Defendant argues that the tapes only confused the jury and resulted in prejudice. As it was for the tapes, the standard of review for the use of transcripts is abuse

of discretion. *Devous,* 764 F.2d at 1354. The court in *Devous* commented that, when the parties had not stipulated to use the transcript, the best procedure for testing its accuracy is for "the trial court to make a pretrial determination of accuracy by reading the transcript against the tape...." *Id.* at 1355 (quoting *United States v. Slade,* 627 F.2d 293, 302 (D.C.Cir. 1980)).

■ The trial court examined the transcripts in a pretrial hearing on the admissibility of the tapes. At that time, some areas of dispute in the transcripts were corrected, record, vol. 4, at 41–42, and the court found the transcripts to be accurate and carefully done. Record, vol. 6, at 436. Before allowing the jury to see the transcripts, the court instructed them to disregard the transcripts if particular words were indeterminable from the tapes. Record, vol. 6, at 355–56. The court also permitted the jury to read only the pages of the transcript that related to the tapes being played. Defendant's citation to the record does not make clear that Ms. Patillar found anything more than minor errors in the transcripts. In view of these precautions, we find that the trial court did not abuse its discretion in allowing the use of the transcripts.

### III. *Count 1—Conspiracy to Distribute Cocaine*

Defendant objects to his conspiracy conviction on the ground that the Government has not produced sufficient evidence to show that he was involved in a conspiracy to distribute cocaine. Defendant maintains that the evidence merely reveals that he was a buyer in several unrelated transactions. We have held that the "proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy...." *United States v. Watson,* 594 F.2d 1330, 1337 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). In order for the Government to establish a case of conspiracy against the defendant, it must sufficiently prove that the defendant had a common purpose with his coconspirators to possess and distribute cocaine. *United States v. Kendall,* 766 F.2d 1426, 1431 (10th Cir. 1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *United States v. Dickey,* 736 F.2d 571, 581–82 (10th Cir. 1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985).

■ As evidence of a conspiracy, the Government points to (1) the defendant's conversation with Ms. Patillar in which he disclosed that his former sources in Tulsa were unavailable but that he had a source in Oklahoma City, and (2) the couple's subsequent purchase of cocaine from Ms. Royal. The Government also recites two other instances in which defendant purchased cocaine from other sources and shared it with Ms. Patillar and others. This evidence does not reveal a common goal of the defendant with Ms. Patillar or the various sellers to possess and distribute cocaine. There is no indication that defendant was making a profit or distributing cocaine when he merely shared his purchases with his friends present at the time of sale.

■ The Government argues that, although a buyer-seller relationship may be insufficient to reveal a common goal and purpose to distribute cocaine, an inference may be drawn as to defendant's awareness of the scope of the conspiracy from the evidence of the volume and nature of the operations. *Watson,* 594 F.2d at 1340. Even considering the evidence in the light most favorable to the Government, there is no evidence of any conspiracy.

To make a finding of a single conspiracy, the jury must be convinced beyond a reasonable doubt that the alleged coconspirators possessed a common, illicit goal. To satisfy this "common objective" test ... the essential element of interdependence must be met—each alleged coconspirator must depend on the successful operation of each "link" in the chain to achieve the common goal. [The important question in a drug transaction is whether the separate transactions] "constituted essential and integral steps toward the realization of a common, illicit goal."

*Dickey,* 736 F.2d at 582 (citations omitted). The Government here has failed to show any common goal or larger scheme beyond each single transaction in which defendant possessed cocaine and distributed it to those who happened to be at the sale. Nor does the Government contend that defendant knew of a broad conspiracy or that the relatively small amounts of cocaine he purchased should have alerted him to a conspiracy. *See Watson,* 594 F.2d at 1340. In *Dickey,* the conspiracy was to possess and distribute marijuana and cocaine for profit. The court noted the scheme for distributing drugs for profit undeniably depended on the success of each transaction. The same is not true here. The Government has not shown that if defendant had failed to possess and distribute drugs on any one of the named occasions, the failure would have had any effect on the success of the other transactions.

Although defendant must satisfy a high standard of review—sufficiency of the evidence—the Government has not shown sufficient evidence or satisfactorily explained its theory of a larger conspiracy. We conclude that the conviction of conspiracy was improper. Therefore, the conviction on count one is reversed.

### IV. *Appeal from Denial of Motion for New Trial on Grounds of Newly Discovered Evidence*

Defendant claims that on March 24, 1986, he told Ms. Patillar he only had a limited amount of cash with him and that he had used it to pay for his motel room. After the trial, defendant submitted a receipt for his motel room payment which, he argues, shows that he had no money with which to purchase cocaine. Defendant argues this new evidence entitles him to a new trial.

■ To overturn the trial court's denial of his motion for a new trial, defendant must show the trial court abused its discretion. *United States v. Latimer,* 780 F.2d 868, 870 (10th Cir.1985). The Government states that Ms. Patillar gave defendant $300 (which she obtained from the FBI) toward the purchase of cocaine on March 24, and that defendant gave Ms. Royal, the

seller, $375 for the cocaine. Defendant claims he had no money but does not contest these allegations stated in the Government's brief and accompanied by cites to the record. Therefore, the new evidence does nothing more than corroborate defendant's statement that he paid the motel bill in cash. The jury could have inferred that defendant also paid $75 for the cocaine, even though he paid the motel bill in cash. Defendant does not elaborate on how exactly the court abused its discretion.

■ Defendant also argues that the verdicts in counts 9 and 10 are inconsistent and that the newly discovered evidence could clear up conflicting accounts of the events on the evening of March 24. The jury found defendant guilty of count 9, using a telephone to facilitate the distribution of cocaine, and of count 10, possession with intent to distribute cocaine. Apparently plaintiff wonders how he can be convicted of using a telephone to facilitate distribution of cocaine when the underlying offense is not distribution of cocaine but only possession with intent to distribute. Possession with intent to distribute and distribution are violations of the same statute, 21 U.S.C. § 841(a)(1) (1982); and pursuant to 21 U.S.C. § 843(b) (1982), the plaintiff can be convicted for using a telephone to facilitate "any act or acts constituting a felony under any provision of this subchapter...." Thus, plaintiff's conviction on count 9 could be based on either distribution or possession with intent to distribute. The verdicts on counts 9 and 10 are not inconsistent. Furthermore, defendant does not explain how the new evidence would shed any light on the jury's alleged inconsistency or would be likely to change the verdict. Thus, the court did not abuse its discretion in denying the motion.

### V. *Appeal from Denial of Motion for Judgment of Acquittal Based on Insufficient Evidence to Support a Conviction for the Use of a Communication Facility*

Section 843(b) of title 21 provides:

It shall be unlawful for any person knowingly or intentionally to use any

communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter.

21 U.S.C. § 843(b) (1982).

■ To prove "facilitation" this court has required a showing that the use of the communication facility, a telephone in this case, makes the commission of the offense easier. *United States v. Watson,* 594 F.2d 1330, 1343 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). The Government argues that when he telephoned, by reaching a busy signal defendant inferred that Ms. Royal (a known source) was at home; and he therefore immediately went to Ms. Royal's apartment where he obtained cocaine. The jury could have inferred that if he had not reached a busy signal, defendant would not have gone to Ms. Royal's apartment, and might have gone to other efforts to procure cocaine elsewhere. Therefore, the call facilitated the transaction by making it easier for him to get the cocaine, because he went directly to Ms. Royal's house and made the purchase.

Although prior cases in this area have generally involved telephone calls when there was some actual conversation with reference to drugs or arrangements for the possession of drugs, *see United States v. McLernon,* 746 F.2d 1098, 1106 (6th Cir. 1984); *United States v. Reese,* 775 F.2d 1066, 1075 (9th Cir.1985); *United States v. Phillips,* 664 F.2d 971, 1032 (5th Cir. Unit B, Dec. 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), we conclude that the busy signal to a known source did facilitate the crime. Thus, the trial court did not abuse its discretion in denying the motion.

## VI. *Improper Jury Instruction*

Defendant attacks a single instruction to the jury in which the court stated: "the evidence, when viewed in its entirety, must generate more than mere suspicion of guilt, and where the evidence is equally consistent with both guilt and innocence, you must return a verdict of not guilty."

Record, vol. 9, at 1129. Defendant contends that this instruction constitutes prejudicial error because it permitted the jury to find defendant guilty by a preponderance of the evidence rather than beyond a reasonable doubt.

■ The sufficiency of jury instructions must be determined by looking at the instructions as a whole. *United States v. Burns,* 624 F.2d 95, 105 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). The record indicates that the jury instructions, as a whole, clearly state that the burden of proof was on the Government to prove guilt beyond a reasonable doubt, and that the court also explained the meaning of beyond reasonable doubt. Record, vol. 9, at 1118. The challenged instruction when viewed with the entire jury instruction does not constitute prejudicial error.

## VII. *Conclusion*

Defendant's convictions on counts six, seven, eight, nine and ten are AFFIRMED. Defendant's conspiracy conviction on count one is REVERSED. The trial court's denial of the motions for new trial and judgment of acquittal are AFFIRMED.

This case is REMANDED to the district court to vacate the sentence on count one.