888 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael R. SIDENER, Defendant-Appellant.
 No. 88-3165.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1989.
 
 Before: KENNEDY and DAVID A. NELSON, Circuit Judges, and THOMAS A. WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 A jury found defendant guilty of weapons-related charges brought under 18 U.S.C. Sec. 371 and a murder solicitation charge brought under 18 U.S.C. Sec. 373. The district court granted a post-judgment motion for acquittal on the murder solicitation charge, and defendant appeals his weapons conviction.
 
 
 2
 Defendant contests both the admission into evidence of partially inaudible tape recordings made by the government of conversations defendant had with an Internal Revenue Service undercover agent, and the trial court's failure to require the government to produce tapes defendant himself allegedly made of the same conversations. In addition, defendant argues that a map introduced in evidence had been illegally seized. The map was eventually suppressed, but defendant maintains that the delay in suppression should have resulted in a mistrial. Lastly, defendant contends that the district court erred in denying his motion for acquittal on the weapons charges.
 
 
 3
 We do not find defendant's contentions persuasive, and we shall affirm the conviction.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 In the course of investigating a money-laundering scheme, the government made several tapes of discussions held between defendant and an undercover agent concerning the sale of weapons. The quality of the tapes is not uniform, and some portions are more or less inaudible. Defendant claims to have made his own tapes, which he says were seized by the government.
 
 
 7
 In a pre-trial motion, defendant sought to suppress the government tapes and have his own tapes returned to him. The government denied any knowledge of defendant's tapes. In this connection the government offered before-and-after photographs of the searched premises to show that there had not been any tapes in the location where defendant claimed his had been placed.
 
 
 8
 The trial court found that defendant had failed to establish that his tapes were in the area from which property was seized. The court did allow testimony by the wife of co-defendant Michael Poulous as to the existence of defendant's tapes, but not as to what she remembered of their content.
 
 
 9
 In regard to the government tapes, the district court determined that much of the discussion they contained was both audible and probative. The tapes were played to the jury, and the jury was given a written transcript from which the passages that were in dispute had been deleted. The court instructed the jury that the tapes alone were evidence--not the transcripts--and that should the jury find a discrepancy between the two, the tapes would be controlling. Where passages were inaudible, the court allowed both the undercover agent and defendant to testify as to what they remembered being said.
 
 
 10
 We see no abuse of discretion here. In United States v. Robinson, 763 F.2d 778, 781 (6th Cir.1985), we said that:
 
 
 11
 "Tape recordings are generally admissible unless the incomprehensible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy.... [T]he decision to admit tape recordings into evidence rests with the sound discretion of the district court judge."
 
 
 12
 In the case at bar the incomprehensible portions are not so substantial as to render the recordings as a whole untrustworthy, and there would have been no question of an abuse of discretion had the tapes been played to the jury without a transcript being provided. United States v. Vega, 860 F.2d 779 (7th Cir.1988); United States v. McIntyre, 836 F.2d 467 (10th Cir.1987). The decision to give the jury written transcripts as an aid to comprehension does not represent an abuse of discretion, in our view. See United States v. Hsieh Hui Mei Chen, 754 F.2d 817 (9th Cir.), cert. denied, 471 U.S. 1139 (1985).
 
 
 13
 We see nothing wrong in allowing testimony as to the content of the missing passages. The undercover agent's testimony would have been admissible absent the tapes, and the existence of the tapes does not render inadmissible testimony as to what was said in the portions of the conversations not picked up by the recording device.
 
 
 14
 The trial judge refused to allow Mrs. Poulous to testify as to the content of the tapes allegedly made by the defendant. Mrs. Poulous was not present when the conversations occurred, but defendant was--and defendant, of course, was allowed to give his version of what was said. If there was any error in excluding the testimony of Mrs. Poulous, the error was harmless.
 
 
 15
 With regard to the alleged loss of defendant's tapes, the district court was not persuaded that IRS agents had either seized or destroyed the tapes. We may not second-guess the trial court's factual findings absent clear error, United States v. Touchstone, 726 F.2d 1116 (6th Cir.1984), and no such error is evident here.
 
 
 16
 While due process requires that criminal defendants be allowed to present a full defense, moreover, the government does not have an affirmative duty to preserve evidence on the defendant's behalf. California v. Trombetta, 467 U.S. 479 (1984). As long as evidence is not destroyed to circumvent the requirements of Brady v. Maryland, 373 U.S. 83 (1962), due process is not offended. Trombetta at 488; Killian v. United States, 368 U.S. 231, 242 (1961). And for Brady to apply, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta at 489. Defendant does not claim that his tapes were marked in a way that would make it apparent to the IRS that they might contain exculpatory evidence--and the jury did have the benefit of the tapes made by the government. Destruction of defendant's tapes, if it occurred, did not rise to the level of a constitutional violation.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 Defendant's next major contention relates to the hand-drawn map that was suppressed some days after it had been received in evidence. Defendant's argument that the delay in suppression should have resulted in a mistrial depends on there having been an illegal seizure in the first place. No such illegal seizure occurred, in our opinion.
 
 
 20
 The district court found that the map was seized after it had been placed in a sealed envelope intended for mail, but while it was still in co-defendant Poulous' briefcase. Relying on Walter v. United States, 447 U.S. 649, 654 (1980), the court ruled that seizure under such conditions violated the Fourth Amendment. But unlike the evidence involved in Walter, the map in this case had not been deposited in an official post office receptacle. Accordingly, a Fourth Amendment violation did not occur. Rawlings v. Kentucky, 448 U.S. 98, 105-06 (1980).
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 Defendant's final contention is that there was insufficient evidence to support his conviction on the weapons charge. In assessing the sufficiency of the evidence we must ask "whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt." United States v. Scaife, 749 F.2d 338, 347 (6th Cir.1984), citing United States v. Meyers, 646 F.2d 1142, 1143 (6th Cir.1981).
 
 
 24
 The tapes and the live testimony--which strongly suggested that defendant intended to sell weapons and a silencer in violation of the statute--easily met this test. Defendant's claims that he never intended to do business with the undercover agent and that he considered the sales legitimate are no more convincing to us than they were to the jury.
 
 
 25
 The conviction is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation