**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BRETT CHRISTIANSEN,

      Defendant - Appellant.

No. 98-8108

(D.C. No. 97-CR-132-05-J)

(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **HENRY**, Circuit Judges.

      Defendant-Appellant Brett Christiansen was convicted on one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. He was sentenced to sixty-three months' imprisonment, four years' supervised release, a $3,500 fine, and a $100 special assessment. Defendant appeals, alleging that the evidence was insufficient to support the conviction. He also challenges his sentence, arguing that the district court improperly denied a downward adjustment under the safety valve provisions of the sentencing statute,

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

18 U.S.C. § 3553(f), and the United States Sentencing Guidelines § 5C1.2.

We first address Defendant's argument regarding the sufficiency of the evidence. "[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotation marks and citation omitted).

The essential elements of a conspiracy to distribute drugs are detailed in United States v. Evans, 970 F.2d 663, 668-71 (10th Cir. 1992).

> To prove conspiracy, the government must show [1] that two or more persons agreed to violate the law, [2] that the defendant knew at least the essential elements of the conspiracy, . . . [3] that the defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent.

Id. at 668 (quotation marks and citation omitted).

Defendant asserts that he did not participate in the conspiracy. Although he admits that he "distributed some of his methamphetamine on a casual basis," he argues that there was no evidence that he "obtained, dealt or shared methamphetamine for profit." Appellant's Br. at 13-14. He further claims that he did not knowingly and voluntarily participate in the scheme when he loaned his

drug supplier $4,000.

The government presented evidence that Defendant sold or otherwise distributed at least a small part of the drugs he purchased. Becky Henderson testified that she observed Defendant distributing methamphetamine to at least four persons. One of those persons testified that he bought "teeners" (one-sixteenth-ounce quantities) from Defendant. A Wyoming Division of Criminal Investigation [DCI] agent testified that Defendant admitted sharing methamphetamine with another of those persons because he helped around Defendant's house and with Ms. Henderson because she helped him with his books. Another witness testified that Defendant gave him methamphetamine for his use and money to purchase methamphetamine for Defendant's use.

Whether the evidence of Defendant's distributions was sufficient to show participation is a close question. On the one hand, we have never held that evidence of a profit or a profit motive is essential to prove conspiracy. We agree with the Fifth Circuit's reasoning on this issue: "The fact that [a defendant] did not have a stake in the conspiracy . . . is not determinative. The fact that an accused has a stake in an alleged conspiracy is merely relevant to establishing participation in the scheme. But it is not a requirement." United States v. Keller, 784 F.2d 1296, 1299 (5th Cir. 1986); cf. Direct Sales Co. v. United States, 319 U.S. 703, 713 (1943) (observing that "a 'stake in the venture' . . ., even if it may

not be essential, is not irrelevant to the question of conspiracy"). On the other hand, we have held that evidence of a single drug purchase and the loan of scales to aid in weighing cocaine was not sufficient to establish that a defendant "shared in the common distribution objective of the conspiracy." Evans, 970 F.2d at 673. We have also held that there was no evidence of a common purpose or goal when a defendant purchased cocaine and merely shared it with others. See United States v. McIntyre, 836 F.2d 467, 471 (10th Cir. 1987).

We need not decide whether Defendant's casual distributions were sufficient to show participation in the conspiracy because the government presented more significant evidence of Defendant's participation. Three witnesses testified that Defendant played a pivotal role in the survival of the enterprise when, on or near October 17, 1996, he loaned his supplier $4,000. David Reese, the government's principal witness, testified that he received the $4,000 loan from Defendant for use in the drug operation. He told Defendant that he had obtained a pound of methamphetamine on credit and then had "been ripped off," sustaining a loss of $10,000 in drugs and cash proceeds. R., Vol. 5 at 20. He told Defendant that he needed a loan to pay his drug source. He asked for "any amount" Defendant could provide him to pay down his debt for the methamphetamine he had already received so that his source would "front" him more drugs. Id. at 19-20. He testified that Defendant lent him $4,000 and that

they wrote up a loan agreement indicating that the $4,000 loan was for the purchase of a mobile home.  See id. at 20-22.

At trial Ms. Henderson stated that she knew why Mr. Reese needed the loan when she introduced him to Defendant.  She testified that, following his meeting with Mr. Reese, Defendant told her that he had made the loan, that it should be kept secret, and that "he had made it all legal."  Id., Vol. 8 at 79.  He told her that he had made Mr. Reese "make up a paper saying it was for the trailer."  Id.  In addition, the DCI agent testified that Defendant had told him that "he knew that the [loan proceeds were] being used for Mr. Reese to pay off a drug debt."  Id. at 136.

Defendant, who did not testify at trial, argues that he did not know the purpose for the loan.  He also asserts that, even if he knew the purpose, he made no profit on the loan.  The jury obviously found the testimony of the government witnesses credible and concluded that Defendant knew the purpose for the loan. "We do not . . . second-guess the jury's credibility determinations."  United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997).  Furthermore, as we have explained in the foregoing analysis, evidence of a profit or a profit-making motive is not necessary to prove participation in a conspiracy.  What is essential is proof that the conspirators acted to further "'a common, illicit goal.'"  McIntyre, 836 F.2d at 471 (citation omitted).  Evidence in the record supports a jury finding that

Defendant shared with other conspirators the illicit goal of maintaining a flow of drugs and that he loaned Mr. Reese $4,000 to further that goal.[1]  Reviewing the record in a light most favorable to the government, we therefore conclude that there was sufficient evidence from which a reasonable jury could find Defendant guilty beyond a reasonable doubt on the charged conspiracy.

We turn now to Defendant's argument that he was entitled to the benefit of the safety valve provisions of the sentencing statute and the Sentencing Guidelines.  These provisions require the district court to impose a sentence pursuant to the Guidelines, without regard to the statutory minimum, if the defendant meets five criteria, including that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense" of conviction and all relevant conduct.  18 U.S.C. § 3553(f)(5); see also U.S.S.G. § 5C1.2(5).  The defendant bears the burden of proving that he has met the § 3553(f) criteria.

---

[1]Evidence in the record could also support a jury finding that Defendant had a profit-making motive and realized a profit on his loan.  Government's Exhibit 400, the agreement signed when Defendant made the $4,000 loan, includes the provision: "To be repaid in one payment of $4,500 in 30 days, November 13, 1996."  R., Vol. 4 at 31.  This represents a significant anticipated profit.  Mr. Reese testified that he repaid $1,500 of the loan in cash and the rest in methamphetamine.  He delivered the methamphetamine in "eight balls" (one-eighth-ounce quantities), calculating a $150 payoff for each eight ball.  Mr. Reese testified that the going rate for eight balls was $250 but that he discounted the price because Defendant had "helped [him] out."  Id., Vol. 5 at 29.  Repayment at the discounted rate represented a significant actual profit to Defendant.

See United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997). "We review the district court's determination of a particular defendant's eligibility for relief under § 3553(f) for clear error. To the extent that the district court interpreted the 'scope and meaning' of 3553(f)(5), we review its legal determination de novo." United States v. Gonzalez-Montoya, 161 F.3d 643, 651 (10th Cir. 1998) (citations omitted), cert. denied, 526 U.S. 1033 (1999).

Our cases hold that § 3553(f)(5) "is very broad, requiring disclosure of everything the defendant knows about his own actions and those who participated in the crime with him." Myers, 106 F.3d at 941; see also United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995). Defendant denied that he had any knowledge of the one-pound drug transaction that led to his $4,000 loan to Mr. Reese. Although Defendant did not testify at trial, he submitted an affidavit at sentencing denying knowledge of the drug transaction and testified at the sentencing proceedings that he did not recall Mr. Reese ever "telling [him] anything about owing a debt" or "mention[ing] anything to [him] about a one pound or 16 ounces or meth being even ripped off from his car." R., Vol. 11 at 29-30. Defendant's testimony contradicted the trial testimony of Mr. Reese, Ms. Henderson, and the DCI agent.

The district court found the trial testimony credible; it did not believe Defendant's affidavit and testimony at the sentencing hearing. Therefore, the

court concluded that Defendant had not truthfully provided all relevant information to the government. At the conclusion of the sentencing proceedings the court stated:

> Accepting for the moment the jury's finding in this matter apparently that this loan transaction, which I do think is a key one, was one that was negotiated with knowledge, it seems to me to strain my belief system substantially for the defendant to come here at this point and attempt to deny any knowledge of Mr. Reese's involvement in drugs in October, by October of 1996. I think it is highly likely he was knowledgeable at that time.

Id. at 90. The court then ruled, "As to the safety valve, the weight of the affidavit really doesn't convince me and I'm going to reject the safety valve in this case."

Id. at 94. After carefully reviewing the record in this case, we conclude that the district court did not clearly err when it found that Defendant was not eligible for a safety valve adjustment under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge