**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Henry W. QUINTANA, Defendant–Appellant.**

No. 94–4019.

United States Court of Appeals, Tenth Circuit.

Nov. 22, 1995.

Richard MacDougall, Assistant United States Attorney, Salt Lake City, (David J. Schwendiman, First Assistant United States Attorney, Scott M. Matheson, Jr., United States Attorney, Salt Lake City, Utah, with him on the briefs), for Plaintiff–Appellee.

Robert L. Booker, Booker & Associates, Salt Lake City, Utah, for Defendant–Appellant.

Before BRORBY and McKAY, Circuit Judges, and OWEN,* District Judge.

OWEN, Senior District Judge.

 Henry Willie Quintana, Jr. was convicted in the District Court for the District of Utah of thirty-two counts of narcotics violations, the alleged major figure in a cocaine-selling operation. Quintana's principal contention before us is that the district court was in error in denying his motion to suppress certain wiretap evidence. Three wiretap orders of Utah State Judge Michael Murphy and supporting applications are at issue: an original order of October 25, 1991; a supplemental order of October 29, 1991; and, a second supplemental order of November 26, 1991. Since the argument before us, the second supplemental order was the subject of a ruling by another panel of this Court on April 5, 1995 in *United States v. Mondragon,* reported at 52 F.3d 291 (10th Cir.1995). There, on an appeal by two of Quintana's

---

* The Honorable Richard Owen, Senior District Judge for the United States District Court for the Southern District of New York, sitting by designation.

codefendants who took pleas in this very case, the panel reversed the district court and suppressed all evidence derived from the second supplemental order, observing that:

> Under Utah Code Ann. § 77–23a–10(1)(c), each wiretap order must include 'a full and complete statement as to whether other investigative procedures have been tried and failed or why they reasonably appear to be either unlikely to succeed if tried or too dangerous.' *See also* 18 U.S.C. § 2518(1)(c). This statement is known as the necessity requirement. *See Nunez,* 877 F.2d at 1472. Additionally, the judge must make a finding, based on the facts submitted by the applicant, that 'normal investigative procedures have been tried and have failed or reasonably appear to be either unlikely to succeed if tried or too dangerous....' Utah Code Ann. § 77–23a–10(2)(c); *see also* 18 U.S.C. § 2518(3)(c).

> \*    \*    \*    \*    \*    \*

> The second supplemental application and affidavit submitted by the police completely fail to address the necessity requirement.

*Id.* at 293.

This ruling is, of course, binding on us, and given the suppression of that order, we reverse Quintana's convictions on count one and counts seven through thirty-two, which were based in material part on conversations intercepted pursuant to the said second supplemental order.

■■■■ We next turn to Quintana's challenge to the validity of the first supplemental order, an order not in issue in *Mondragon, supra.* Quintana argues that, like the second supplemental order, the first supplemental order failed to meet the necessity requirement, thus requiring reversal of his conviction on counts two through six, the evidence of which consisted largely of conversations intercepted pursuant to the *first* supplemental order. We note that a wiretap authorization order is presumed proper, and a defen-

dant carries the burden of overcoming this presumption. *United States v. Nunez,* 877 F.2d 1470, 1472 (10th Cir.), *cert. denied,* 493 U.S. 981, 110 S.Ct. 514, 107 L.Ed.2d 515 (1989). We review de novo whether the § 2518(1)(c) necessity requirement was met. *United States v. Armendariz,* 922 F.2d 602, 608 (10th Cir.1990), *cert. denied,* 502 U.S. 823, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). Observing that Utah Code Ann. § 77–23a–10, pursuant to which the order here issued, is substantially identical to 18 U.S.C. § 2518, the federal statute governing wiretaps, we apply federal law in our review of the admissibility of the evidence derived from the said interceptions. *Armendariz,* 922 F.2d at 607. The original order issued by Judge Murphy on October 25, 1991, and its supporting application complied with the probable cause and necessity requirements of the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.,* and is not attacked here, nor was it in *Mondragon.* That order authorized electronic surveillance of one telephone and one mobile phone, both of which were listed in the name of Quintana's mother, Barbara. Monitoring was never initiated on the mobile phone, however, because the day the order issued, and before monitoring could begin, Mrs. Quintana obtained a new number for the said phone. Four days later, on October 29, 1991, Judge Murphy issued a supplemental order authorizing a wiretap on the same phone with its new number. Although the supplemental application did not address the "necessity requirement" as such,[1] we are satisfied that it is nevertheless valid, whether under a common sense approach to the Wiretap Act, *see Nunez,* 877 F.2d at 1472, or under the spirit of guidance enunciated in *United States v. Ventresca:*

> This Court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant. By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order. This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional

---

1. The supplemental affidavit of Deputy Sheriff Craig Watson did put before Judge Murphy the circumstances of his learning of the new number for Barbara Quintana's mobile phone, and that

the prior papers had fully provided "probable cause" for Barbara's mobile phone with a different number, which Watson was entitled to state, Judge Murphy having just signed the prior order.

course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. In our view the officers in this case did what the Constitution requires. They obtained a warrant from a judicial officer 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized.' It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and to the rights of the community.

380 U.S. 102, 111–12, 85 S.Ct. 741, 747–48, 13 L.Ed.2d 684 (1965) (citations omitted).

The supplemental order was issued a mere four days after the original order for the sole reason, as noted, that the telephone number had been changed. We note that, in contrast, the second supplemental order held invalid in *Mondragon* authorized surveillance of a new number, listed in the name of a different individual residing at a different location.

■ Quintana argues alternatively that his conviction on the remaining counts must be reversed because of prejudice resulting from the district court's failure to suppress evidence derived from the second supplemental order. We agree to the extent that a new trial is mandated as to those counts. Communications intercepted pursuant to the second supplemental order were introduced as evidence of count one and counts seven through thirty-two, and there was doubtless some "spill-over" effect throughout from such evidence. This necessarily affected the fairness of Quintana's trial on all other counts, which, accordingly, are reversed and remanded for a new trial.

■ We address briefly Quintana's remaining contentions on appeal, which we find to be without merit. First, Quintana argues that the district court committed reversible error by admitting the wiretap tapes and transcripts themselves into evidence. Evidentiary rulings are reviewed under an abuse of discretion standard. *United States v. Fingado*, 934 F.2d 1163, 1164 (10th Cir.), *cert. denied*, 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991). At trial, Quintana objected to the tapes and transcripts on the basis that they contained inadmissible hearsay and that the speakers on the tapes were unavailable for cross-examination. He argued that the tapes could not be admitted under the coconspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), because there was no finding of a conspiracy. Quintana's argument is wide of the mark. The record reveals that the district judge did not admit the tapes under the coconspirator exception. In fact, he expressed doubt as to its applicability and excluded several tapes offered under that exception.[2] All the tapes admitted by the district judge consisted of conversations to which Quintana was a party. Thus, the conversations were admissions by a party-opponent and not hearsay, pursuant to Fed.R.Evid. 801(d)(2)(A). The district judge excluded four tapes and part of a fifth (up until Quintana himself joined the conversation) to alleviate any prejudice that might result from Quintana being unable to cross-examine the speakers. His decision to admit the tapes was well within discretion.

■ Quintana next contends that the district court abused its discretion by allowing detective Watson to testify as an expert witness to the meaning of the conversations recorded on the wiretap tapes and by allowing him to use a chart which summarized his findings. The district judge's determination to allow the expert testimony and receipt of

2. The district judge stated:
   It's the ruling of the court that the Exhibits 1, 3, 6, 11 and 7 to the, except for the part where the defendant Henry Quintana is participating, should all be excluded. I consider that there is doubt as to whether they come under the exception to the hearsay rule under 801(d)2(e) but I find in any event those conversations are prejudicial in the sense that the prejudice would outweigh the probative effect of the testimony given in those statements. With respect to all other exhibits I find that the probative effect of the testimony outweighs any prejudice, that there is sufficient relevance and probative effect of the testimony to overcome any claim of relevance and it would be impracticable in any event to start separating any of the portions of the tapes.
   Trial Tr. at II–25.

the chart into evidence is reviewed for abuse of discretion. *United States v. Simpson,* 7 F.3d 186, 188 (10th Cir.1993).

At trial, the government offered Watson as an expert for the purpose of interpreting for the jury various words and phrases used by the speakers on the tapes. The court accepted Watson's qualifications as an expert and permitted him to testify to his interpretation of the tapes. Under Fed.R.Evid. 702, expert testimony is permitted "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." This Court has repeatedly held that in narcotics cases, expert testimony can assist the jury in understanding transactions and terminology. *See United States v. Garcia,* 994 F.2d 1499 (10th Cir.1993); *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir.1992); *United States v. McDonald,* 933 F.2d 1519, 1522–23 (10th Cir.), *cert. denied,* 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991); *Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). A review of the record reveals that Watson's testimony was designed to aid the jury's understanding of the wiretap evidence. For example, a taped conversation between Quintana and his father included references to "balls." Watson testified that the term "ball" meant "one 8th of an ounce of cocaine, an 8 ball." Trial Tr. at II–106. Similarly, Watson interpreted an intercepted conversation between Quintana and Johnny Salizar in which Quintana says he paid Rodrigo Alanis "150 for every 9." Watson testified: "That represented to me he paid $150 for every 9 ounces of cocaine that [Alanis] handled on [Quintana's] behalf." Trial Tr. at II–122. The following colloquy is illustrative of Watson's testimony:

Q: Detective Watson, directing your attention to page 4 of the transcript and there is reference to 8 and a half. Are you able to interpret that reference?

A: Yeah. That 8 and a half referred to 8 and a half ounces of cocaine.

Q: Now there is also a reference to it's been stomped on, those are the words that are used. Have you heard that term used before?

A: Yeah, that's another term which is used to describe the cutting that we talked about earlier. When a lot of cutting agent is added to the cocaine decreasing its percentage of purity then it's referred to as being cut and sometimes stomped on.

Trial Tr. at II–118. Watson's testimony clearly fell within the parameters of Rule 702 and precedent in this Circuit. Moreover, The district judge cautioned the jury that they were the fact finders and that they should afford Watson's testimony the weight they deemed appropriate. Trial Tr. at II–127. Quintana obviously also had the opportunity to challenge Watson on cross-examination. We conclude that the district judge did not abuse his discretion by allowing Watson to testify as an expert.

During Watson's testimony, the government offered into evidence a chart Watson had prepared. The chart summarized Watson's opinion regarding amounts of cocaine and money involved in Quintana's operation. Although the chart included data from intercepted calls not offered into evidence, the original tape recordings were made available both to Quintana and the district court. Fed. R.Evid. 1006 provides: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place." The chart at issue in this case complied with the requirements of Fed.R.Evid. 1006. In addition, the district judge cautioned the jury that the chart was simply representative of Watson's testimony.[3] There was no abuse of discretion in admitting the chart.

3. The district judge stated:
   These exhibits are simply representative of what his testimony is but in a summary form, so it will be for you to determine whether they track his testimony but the idea of this kind of exhibit

is to put in one piece of paper a summary of the representative testimony of a witness and for that purpose we permit it to be done. Trial Tr. at II– 150.

Finally, Quintana contends that count one charging him with a violation of the Continuing Criminal Enterprise statute, 21 U.S.C. § 848 should have been dismissed, there being insufficient evidence to permit a jury to conclude that he occupied a position of organizer, or was in a supervisory or management position with respect to five or more others in the operation of the drug ring. However, putting the tapes from the second supplemental order to one side, a reading of the transcripts of the tapes obtained pursuant to the first supplemental order, by themselves, and however cryptic, furnishes a sufficient basis, together with other testimony, to permit a jury to convict on that count, should the jury on retrial credit the admissible evidence.

Accordingly, Quintana's conviction is reversed. The fruits of the second supplemental wiretap application are suppressed. We remand to the district court for a new trial in all other respects in accordance with the foregoing.