**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RODERICK WALKER, a/k/a "Rudd,"

Defendant - Appellant.

No. 05-5127

(N.D. Oklahoma)

(D.C. No. 04-CR-0099-E)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit
Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Roderick Walker was convicted, following a jury trial, of one count of conspiracy to possess with intent to distribute LSD, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(v) and 846, and four counts of using a communication facility to facilitate the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. § 843(b). He was sentenced to a term of life imprisonment and assessed a fine of $10,000 and a special assessment of $500. He appeals his conviction, arguing that the district court committed plain error by admitting expert testimony that was unduly prejudicial.

**BACKGROUND**

Walker was indicted in June 2004. His trial was held over six days in April 2005. The government presented eleven witnesses. Four of these were individuals who testified that they had been involved in or had witnessed LSD distribution activities. Specifically, Charles Ledbetter testified that he had purchased LSD from Anthony May over a period of months in spring and summer 2003 and sold it to others. He testified that on August 18, 2003, he sold 95 "hits" of LSD to Special Agent Sean Henry, who was working undercover. Tr. of Jury Trial at 186, R. Vol. III. He also stated that on September 2, 2003, he sold 300 hits to Special Agent Henry, and on September 8, 2003, he sold four vials of liquid LSD, which he had purchased from May, to Special Agent Henry.

Ledbetter also described a meeting he set up between May and Special Agent Henry in Tulsa, Oklahoma, on September 25, 2003, which was also attended by Thomas Mullen, whose apartment in Springfield, Missouri, was used "to stash all of the LSD." Id. at 197. Ledbetter stated that he was arrested by Special Agent Henry on October 27, 2003, and subsequently cooperated with the investigation.

Anthony May testified that he had first met "Rudd," whose real "name is Roderick Walker," id. at 262, R. Vol. IV, in May 2003 at a concert and purchased LSD from him there, and Walker had given him "a cell phone number so [he] could get ahold of him if [he] needed to do any further transactions." Id. at 263-64. He stated that he had contacted Walker, who instructed him to "wire transfer him money through Western Union." Id. at 267. May then indicated that he had wired money to Walker four times, to different locations under different names, and that Walker would mail him hits of LSD, in quantities of 500 hits a time, to different addresses. He stated he had also purchased four vials of liquid LSD from Walker, and that he had also traveled four times to a house in Kansas City to pick up LSD directly from Walker. On one of these occasions, Walker told him he was unavailable but that Elena Heschmeyer could supply him, and Heschmeyer had taken him to the same house and sold him the LSD. May indicated that he used Mullen's apartment for storage and that he sold the LSD, including the four vials of liquid LSD, to Ledbetter, who "would dispense it." Id. at 266. May also

-3-

testified that he had met with Special Agent Henry in Tulsa, Oklahoma, on September 25, 2003, and had sold him 300 hits of LSD. May stated that he was arrested by Special Agent Henry on November 25, 2003, and then began cooperating with the investigation, initiating a call to Walker which was recorded. A recording was played for the jury, in which the speakers discussed buying "postcards," which May testified was "code" for "every hundred hits of LSD." Id. at 329-30.

Thomas Mullen also testified, describing the trip with Ledbetter and May from Springfield to Tulsa on September 25, 2003, and the meeting with Special Agent Henry, and stating that he had "allow[ed] narcotics to be stored at [his] home," including LSD. Id. at 436. Mullen stated that May had told him "a few times" that his source for obtaining LSD was "Walker." Id. at 439.

Elena Heschmeyer testified that she had known Walker for fourteen years. She stated that Walker had been staying at her house in Kansas City and that she had seen May visit Walker there and had seen and participated in transactions involving May's purchase of LSD from Walker. She indicated that on one occasion she had handled the sale of LSD to May, acting under Walker's direction.

Special Agent Henry testified that he was the primary case agent in the case and described the investigation. He then gave his "opinion as to the extent of

-4-

[Walker's] organization," stating that he "believe[d] it's an extensive United States drug trafficking organization."  Id. at 912, R. Vol. VI.  He based this opinion on

> the number of individuals [he had] identified, as well as the command and control mechanisms that are in place, that Mr. Walker has insulated himself from the everyday dealers, that money transfers are put in other people's names to avoid detection.  Plane tickets . . . [and] [t]elephone records are put in other people's names to avoid detection.  All these are a way for Mr. Walker to step up off of everyday dealing and to insulate himself from being arrested by the DEA.

Id.  He further stated that, based on his training and experience, Walker was not "the average street-level dealer.  We're dealing with somebody that's above that, who is orchestrating several people."  Id. at 913.  Special Agent Henry also was asked his opinion, based on his training and experience, as to "why there's no paper trail with regard to Walker."  Id. at 1011, R. Vol. VII.  Walker's defense counsel objected to this question on the ground that it called for speculation, but his objection was overruled.  Special Agent Henry answered that because Walker was on parole, Walker "d[id]n't want to leave a paper trail so . . . his probation officer or myself can find out where he's at."  Id. at 1011-12.  The agent further opined that Walker "insulated himself.  He commanded and controlled the organization.  He directed other people, so . . . his name wouldn't be on the paper so we could tie him back directly to it."  Id. at 1012.  In the agent's opinion, Walker was "the leader of this organization."  Id.  Special Agent Henry was also

-5-

asked his opinion on who Walker's coconspirators were, over an objection from defense counsel that the question called for speculation. The agent listed May, Ledbetter, and Heschmeyer, among others, and stated, "we go from coast to coast in this investigation, numerous individuals." Id. at 1016.

In its closing argument, the prosecution referred to Special Agent Henry's testimony, indicating that the agent had described "why there's no paper trail for Roderick Walker, why he never had a hotel room . . . or a wire transfer . . . or a plane ticket in his name, is to insulate himself from the organization, consistent with what drug dealers do. And that is exactly what is going on in this case." Id. at 1084.

The jury found Walker guilty on the five counts submitted to it, as indicated above. Following sentencing, Walker appealed.

**DISCUSSION**

The sole issue Walker raises on appeal is that Special Agent Henry's "opinions should not have been allowed" because they constituted impermissible and prejudicial "expert testimony as to the means drug traffickers use to avoid detection and arrest" and "expert testimony on the method of operation of drug dealers." Appellant's Br. at 5. Walker acknowledges that he did not object to Special Agent Henry's testimony on this basis below. Our review is therefore for

-6-

plain error. United States v. Ramirez, 348 F.3d 1175, 1181 (10th Cir. 2004).

Accordingly, even if we agree that the testimony was inadmissible, we may

reverse only if the error was "plain or obvious" and "affect[ed] substantial rights,

in other words, in most cases the error . . . must have affected the outcome of the

trial, in that it seriously affected the fairness, integrity or public reputation of

judicial proceedings." United States v. Bailey, 327 F.3d 1131, 1142 (10th Cir.

2003) (internal quotation, citation, and alteration marks omitted).

The admissibility of expert testimony at trial is governed by Fed. R. Evid.

702. This rule states, in relevant part:

> If . . . specialized knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion . . . , if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony is the product
> of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Essentially, Walker argues that Special Agent Henry's testimony as

described above was not helpful to the jury because it contained no specialized

information about drug trafficking that "the average juror [would not already

know] from movies, television crime dramas, and news stories." Appellant's Br.

at 5. He therefore claims that Special Agent Henry's testimony merely "served to

tell the jury that [Walker] was guilty." Id. For this argument, he primarily relies

-7-

on the Second Circuit's opinion in United States v. Cruz, 981 F.2d 659 (2d Cir. 1992). That case held a law enforcement officer's testimony that drug transactions often involve "the use of guns and the forcing of customers to snort cocaine to weed out undercover officers" was inadmissible because it served merely to bolster the credibility of a fact-witness who had testified that such conduct had occurred. Id. at 663. The court explained that such testimony by the officer "strongly suggests to the jury" that the officer "believes the government's witness[] to be credible and the defendant to be guilty." Id. Its prejudicial effect therefore substantially outweighed its probative value. See id.; see also United States v. Montas, 41 F.3d 775, 784 (1st Cir. 1994) (holding officer's testimony erroneously admitted where he had "testified about matters that were readily intelligible" to the jury).

"This [c]ourt has repeatedly held that in narcotics cases, expert testimony [by a law enforcement officer] can assist the jury in understanding transactions and terminology." United States v. Quintana, 70 F.3d 1167, 1171 (10th Cir. 1995); see also United States v. Torres, 53 F.3d 1129, 1141 (10th Cir. 1995) (distinguishing testimony in that case from that in Cruz). The government argues that Special Agent Henry's testimony in this case was admissible expert testimony because it "offer[ed] his opinion with regard to Walker's drug trafficking organization, how it was organized and what steps Walker took to insulate

himself from the everyday dealers." Appellee's Br. at 12. Based on our review of the record, we agree.

Moreover, even assuming Special Agent Henry's testimony on these matters was unfairly prejudicial in regard to some issues, such as the question of whether Walker was the leader of an extensive nationwide drug trafficking organization, we would not hold that there is plain error. The charges against Walker did not rely on his being a leader, or on the extensiveness of the conspiracy, and the testimony of other witnesses amply supported his convictions on those charges. We therefore affirm Walker's conviction.[1]

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[1]Walker has renewed his motions to file a supplemental brief and to replace his attorney, which were previously denied. Once again, these motions are denied. We note that in Walker's motion to file a supplemental brief, he indicated that he wished to assert the claim that this court lacks jurisdiction over this case. This claim is meritless. To the extent Walker seeks to argue that his counsel was ineffective, such a claim should be brought in collateral proceedings rather than on direct appeal. United States v. Brooks, 438 F.3d 1231, 1242 (10th Cir. 2006).